IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALAN D. STROMSKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 14-cv-1243-CJP[1] |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Alan D. Stromske seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in September 2010, alleging disability beginning on June 1, 2008.  (Tr. 29).  After holding an evidentiary hearing, ALJ Robert G. O'Blennis denied the application in a written decision dated June 20, 2013.  (Tr. 29-37).  The Appeals Council denied review, and the decision of the ALJ became the final agency decision.  (Tr. 1).  Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

---

[1] This matter was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c).   See, Doc. 9.

Plaintiff raises the following issues:

1.    The ALJ erred in failing to ask the vocational expert whether her testimony conflicted with information contained in the *Dictionary of Occupational Titles.*

2.    The ALJ's findings were not supported by substantial evidence because the hypothetical question posed to the vocational expert did not correspond to the limitations contained in the ALJ's residual functional capacity findings.

3.    The ALJ made conflicting statements about whether plaintiff's hypothyroidism was a severe or nonsevere impairment.

## **Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. §§ 404.1572.

In order to receive DIB, plaintiff must establish that he was disabled as of his date last insured.   *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).   It is not sufficient to show that the impairment was present as of the date last insured;

rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date.   *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be

found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Mr. Stromske was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971).   In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this

4

Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ O'Blennis followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date.  He was insured for DIB through September 30, 2011.   The ALJ found that plaintiff had severe impairments of hepatitis C, COPD, and hypothyroidism.  He then stated that plaintiff's hypothyroidism was not a severe impairment because it was well-controlled with medication and did not cause more than minimal interference with plaintiff's functioning.  He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, with some physical limitations.   Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past relevant work.   However, the ALJ also found that he was not disabled because he was able to do other jobs that exist in significant numbers in the economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record

is directed to the points raised by plaintiff and is confined to the relevant time period.   In view of the points raised by plaintiff, the Court will omit an extended discussion of the medical evidence.

### 1.   Agency Forms

Plaintiff was born in 1959 and was almost 49 years old on the alleged onset date of June 1, 2008.   (Tr. 227).   He had worked as a handyman and a construction worker, and as an estimator and superintendent in the construction industry.   (Tr. 249).

Plaintiff stated in a Function Report that he was unable to work because of knee problems, hepatitis C, cirrhosis of the liver and thyroid problems.   (Tr. 231). He was short of breath.   His left hand had a birth defect and he had arthritis in his right hand.   (Tr. 238).

### 2.   Evidentiary Hearing

Mr. Stromske was represented by an attorney at the evidentiary hearing in April 2013.   (Tr. 50).   He testified that he had trouble breathing and used inhalers.   (Tr. 53-57).   He also took medicine for hepatitis C and cirrhosis.   (Tr. 58).   Extreme cold and extreme heat made it hard for him to breathe.   (Tr. 62-63).

Dr. Hilda Martin testified as a medical expert.   She specialized in internal and pulmonary medicine.   Based upon a review of plaintiff's medical records, she testified that plaintiff suffered from COPD, congenital changes in his left hand, cirrhosis and hepatitis C.   She stated that his cirrhosis and hepatitis C "at this point are not causing a severe impairment."   She also described his thyroid condition as "not severe."   (Tr. 67-69).   Pulmonary function tests from November

2012, after the date last insured, showed that his breathing problems were severe at that time.   Earlier tests, from July 2011, showed less serious breathing problems.   His lung problems worsened after his date last insured.   (Tr. 69-70).

A vocational expert (VE) testified that plaintiff's past relevant work as a construction worker, estimator and superintendent were all performed by him at the very heavy exertional level, although those jobs are rated by the *Dictionary of Occupational Titles* ("DOT") at lower exertional levels.   The ALJ asked her to assume a person who was able to do work at the light exertional level, limited to only occasional climbing of ramps and stairs and no climbing ladders, ropes or scaffolding.   He could only occasionally finger and handle with the left upper extremity.   He "should avoid concentrated exposure to temperature extremes beyond those that would normally be in a – you would find in a climate-controlled building, in an office building or a home, things of that sort."   He should be in "temperature and humidity controlled environments."   He should avoid concentrated exposure to environmental irritants and should not work around unprotected heights or dangerous machinery.   The VE testified that this person would not be able to do any of plaintiff's past work.

According to the VE, plaintiff had some transferrable skills.   He would be able to do the job of hardware sales, which is light, semi-skilled and has a SVP of 4. He would also be able to do the job of sedentary file clerk and cashier.   The VE gave DOT numbers for the jobs she testified about.   (Tr. 83-90).

On cross-examination, plaintiff's attorney asked whether plaintiff could still do these jobs if he had to avoid even moderate exposure to pulmonary irritants.

The VE testified that he could because these jobs were in "stores and office type settings."   Counsel also asked whether plaintiff could do these jobs if he could only use his left hand for less than occasional fingering, handling and feeling.   The VE testified that limitation would eliminate the cashier job.   (Tr. 90).

### 3.     Medical Treatment

Mr. Stromske first saw primary care physician Krishna Kunche, M.D., in September 2007.   He presented with a rash on his trunk.   Because of his history of alcohol abuse and IV drug use and his multiple tattoos, Dr. Kunche recommended testing for hepatitis and H.I.V.   He was positive for hepatitis C and negative for H.I.V.   (Tr. 332-333, 355).

Mr. Stromske alleges that he became disabled as of June 1, 2008.

In December 2008, plaintiff complained to Dr. Kunche that he had an unexplained weight loss of 10 pounds.   He was 6'0" tall and weighed 176 pounds. (Tr. 325).   A thyroid scan showed increased uptake.   (Tr. 321).

In September 2010, Dr. Kunche noted that he had not seen the patient since August 2009.   Mr. Stromske had COPD, but no shortness of breath or wheezing. He smoked 1 pack of cigarettes a day.   Dr. Kunche advised him to continue using an albuterol inhaler, Advair and Spiriva, and to stop smoking.   He had chronic hepatitis C with well-preserved synthetic function.   A liver biopsy showed moderate inflammation and cirrhosis.   He had been seen at Barnes Hospital for this, but had lost his insurance coverage.   His hypothyroidism had been treated

with radioactive iodine.   Dr. Kunche prescribed Levothyroxine.[2]   He weighed 217 pounds.   (Tr. 314-315).   In October 2010, Dr. Kunche noted that plaintiff had a congenital abnormality of his left hand, for which he had undergone surgery as a child, and congenital abnormality of the left pectoris muscle.   (Tr. 311).

In March 2011, Dr. Kunche again noted no active wheezing.   (Tr. 387).

Mr. Stromske saw Dr. Butto, a pulmonary specialist, in August 2011.   A pulmonary function test "showed changes compatible with severe obstructive pulmonary disease with a positive bronchodilator response."   He also had "mild pulmonary emphysema."   Dr. Bhutto concluded that his COPD/emphysema was "clinically stable."   He recommended that plaintiff continue with his "current regimen of Advair and p.r.n. ProAir."   (Tr. 425-426).   In September 2011, Dr. Butto noted that plaintiff had no new symptoms and that his COPD/emphysema remained "clinically stable."   He had some pulmonary nodules which needed to be biopsied.   (Tr. 423-424).   A biopsy on September 23, 2011 was negative for metastatic carcinoma.   (Tr. 457, 462).

**Analysis**

Plaintiff's first point is that the ALJ failed to ask the VE whether her testimony conflicted with information contained in the *Dictionary of Occupational Titles.*   Plaintiff correctly points out that SSR-04p provides that an ALJ has an affirmative duty to elicit this information from a VE.     However, the ALJ's failure to do so does not require remand here.

---

[2] "Levothyroxine is a replacement for a hormone normally produced by your thyroid gland to regulate the body's energy and metabolism."   http://www.drugs.com/levothyroxine.html, visited on November 4, 2015.

Plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT at the evidentiary hearing.[3]   Counsel asked some questions of the VE, but did not challenge the basis of her testimony.   Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT."   *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Plaintiff does not argue that there was an *apparent* conflict between the VE's testimony and information in the DOT.   Instead, he argues that there were three "unidentified possible conflicts."   See, Doc. 13, p. 4.

The first possible conflict identified by plaintiff is not a possible conflict with information in the DOT.   Rather, it is a possible conflict with information about skills acquired in jobs that is contained in the *Revised Handbook for Analyzing Jobs,* a Department of Labor publication.   However, SSR-04p does not require an ALJ to enquire into conflicts with the *Revised Handbook for Analyzing Jobs.* SSR-004p only requires the ALJ to ask about conflicts with information in the DOT and its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*.   SSR 00-4p, 2000 WL 1898704.

The second possible conflict identified by plaintiff concerns the aptitude for color discrimination required by the hardware sales clerk job identified by the VE.

---

[3] Plaintiff is represented by a different attorney in this Court.

Plaintiff argues that the hardware sales clerk requires a greater aptitude for color discrimination than his prior work as an estimator did. He argues, incorrectly, that the DOT does not provide information on color discrimination, and he therefore looks to the *Revised Handbook for Analyzing Jobs* combined with a *Characteristics of Occupations* publication from 1992. Again, there is no requirement that an ALJ enquire into conflicts with the *Revised Handbook for Analyzing Jobs.* And, the DOT does, in fact, address the degree of color discrimination required by jobs. The degree of color discrimination for the hardware sales clerk job is the same as the degree required by his past work as a handyman and construction worker. See, DOT, 279.357-050, Salesperson, General Hardware, 1991 WL 672547; DOT 869.381-010, House Repairer, 1991 WL 687582; and DOT 869.664-014, Construction Worker I, 1991 WL 68760. Mr. Stromske has not identified a conflict with information contained in the DOT. Further, he has not pointed to any evidence that he has any deficit in his ability to detect colors.

Lastly, plaintiff argues that he was limited to only occasional fingering, fingering and manipulating with his left (non-dominant) upper extremity, but the DOT provides that the hardware sales clerk job requires frequent reaching, handling and fingering. However, as both parties agree, the DOT does not specify whether jobs require *bilateral* reaching, handling and fingering. If the DOT is silent on a subject, "it is not apparent that the testimony conflicts with the DOT." *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008). Further, plaintiff's counsel asked the VE whether her answer to the hypothetical questions would be

different if plaintiff were able to use his left hand for less than occasional fingering, handling and feeling.   The VE testified that he would not be able to do the cashier job.   (Tr. 90).   Thus, the VE's testimony establishes that the hardware sales clerk job did not require full use of both upper extremities, and that testimony is not contradicted by information in the DOT.

For his second point, plaintiff argues that the hypothetical question differed from the ultimate RFC findings because the ALJ asked the VE to assume a "climate controlled building," while the RFC limited plaintiff to working in an "office or home environment."   Plaintiff points out that the hardware sales clerk job is performed in a store, and not a home or office.

This argument fails because any discrepancy between the question and the RFC finding was harmless.   The hypothetical question posited that plaintiff "should avoid concentrated exposure to temperature extremes beyond those that would normally be in a – you would find in a climate-controlled building, in an office building or a home, things of that sort. . . . temperature and humidity controlled environments. . ."   (Tr. 85).   It is true that the RFC finding specified "an office or home environment."   (Tr. 32).   However, it is clear that the purpose of the limitation was to avoid exposure to extremes of temperature and humidity.   While a retail store is not a home or office, it is a climate-controlled environment.   The DOT description for a hardware salesperson specifies that exposure to extremes of temperature or humidity is "not present."   DOT, Salesperson, General Hardware, 1991 WL 672547.

An ALJ's error is harmless where, having looked at the evidence in the

record, the court "can predict with great confidence what the result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Here, while there was technically a discrepancy between the hypothetical question and the RFC finding, that discrepancy made no difference to the outcome of the case, and the result would be the same on remand. First, the hardware sales job is performed in a climate controlled setting, without exposure to extremes of temperature or humidity, so an ALJ on remand would still find that plaintiff has the RFC to perform that job. In addition, the VE also testified that plaintiff could do the job of file clerk, a sedentary position that is performed in an office. An ALJ on remand would certainly find that plaintiff was able to do that job. Therefore, any error is harmless and does not require remand.

Plaintiff's third point requires little discussion. He is correct that the ALJ called his hypothyroidism both a severe and a nonsevere impairment at step two of the sequential analysis. However, the determination of severity at step two is "merely a threshold requirement." *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010). Where, as here, the ALJ identified at least one severe impairment, he must continue on with the sequential analysis and consider the effect of all of plaintiff's impairments, both severe and nonsevere, at step four. In such a case, the determination that an impairment is nonsevere "is of no consequence with respect to the outcome of the case." *Ibid.*

### Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ O'Blennis committed no errors of law, and that his findings are supported by

substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security denying Alan D. Stromske's application for disability benefits is **AFFIRMED**.

The Clerk of Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   November 5, 2015.**


<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**